UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No.00-6124-CIV-ZLOCH/SELTZER

ALEXANDER ELTMAN, on behalf of
himself and all others similarly situated,

        Plaintiff,

v.

COLUMBIA/HCA HEALTHCARE
CORPORATION, INC.,

        Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

**I.    INTRODUCTION**

This is a suit brought by a single individual[1] who, for a few months, volunteered 4 hours per week at University Hospital and Medical Center ("University Hospital" or "Hospital"). Plaintiff wants to represent "**all**" people who "worked as hospital volunteers" at any "Columbia-owned Hospitals,"[2] allegedly numbering over 300, anywhere in the United States (Complaint ¶7), in a collective action for wages under the Fair Labor Standards Act ("FLSA").

---

[1] It appears that Plaintiff is a New York resident and by profession a member of the New York Bar. *See* Complaint ¶ 4; 12 Martindale-Hubbell Law Directory at p. NY 87P.

[2] Columbia/HCA Healthcare Corporation, Inc., a holding company, does not own or operate University Hospital and Medical Center (University Hospital and Medical Center is owned by University Hospital Ltd., which is an affiliate of Columbia/HCA Healthcare Corporation, Inc.). In short, Plaintiff has sued the wrong entity and has failed to join the real party in interest herein, University Hospital, where Plaintiff volunteered and which is an indispensable party to this action. However, Columbia/HCA Healthcare Corporation, Inc. specially appears to demonstrate that the Court does not have to rule on this issue because Plaintiff's Complaint, on its face, fails to state a claim upon which relief can be granted for other reasons that are dispositive and fatal to the continuation of this suit.

In the Complaint (¶¶ 15-18), Plaintiff takes the clearly erroneous position that volunteers can only "volunteer" at public agencies:

> [T]he FLSA provides **no exemption for religious, charitable or eleemosynary organizations** . . . that compete with other for-profit businesses. The FLSA likewise provides no exemption for, private, for-profit organizations, such as [University Hospital].

(Complaint ¶18; emphasis added). Thus Plaintiff's position is that **anyone** who "volunteers" for **any organization (such as a hospital) other than a public agency** is an "employee" of that organization for purposes of the FLSA, even though these volunteers have no expectation of compensation. As an "employee," the Plaintiff contends, these volunteers must be paid the minimum wage for all hours worked in a workweek with overtime premium for hours worked in excess of 40 in a week (Complaint ¶¶ 30 & 31). To say that Plaintiff's assertion attacks the very foundation of volunteerism in this country is an understatement. Moreover, it is clearly wrong.

The determination of whether Plaintiff is an employee of Defendant under the FLSA is a legal determination. *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315 (6th Cir. 1999), *cert. denied*, ___U.S. ___, 120 S. Ct. 172 (1999) (citing, *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

Because it is established law that individuals may volunteer with for-profit organizations, as well as not-for-profit organizations, without requiring payment of minimum wage and overtime under the FLSA, this Court should dismiss Plaintiff's Complaint on the ground that he

fails to state a claim upon which relief can be granted. Moreover, in order to state a claim in any Amended Complaint, Plaintiff will be required to allege (and subsequently prove) that the "volunteers" had an expectation of compensation and/or economic dependency on the Hospital, which is wholly lacking from the Complaint and from this case.

## II. UNDER ESTABLISHED SUPREME COURT AND ELEVENTH CIRCUIT LAW, INDIVIDUALS MAY VOLUNTEER FOR NON-GOVERNMENTAL HOSPITALS WITHOUT BECOMING FLSA EMPLOYEES

A unanimous United States Supreme Court has recognized that people who volunteer with private, non-governmental, not-for-profit or for-profit corporations can be true "volunteers." To be covered by the FLSA:

> [Individuals] must be "employees" within the meaning of the Act. While the statutory definition [of employee] is exceedingly broad it does have its limits. **An individual who without promise or expectation of compensation, but solely for his personal purpose or pleasure,** worked in activities carried on by other persons either for their pleasure **or profit is outside the sweep of the Act.**

*Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295 (1985) (citations omitted; emphasis added).

The *Alamo Foundation* case itself involved a non-governmental organization. Thus, it is clear that an individual who, for his or her own personal purposes and with no expectation of compensation, volunteers and works "in activities carried on by other persons either for their pleasure **or profit** is outside the sweep of the Act." *Id.*

The Supreme Court in *Alamo Foundation* cited to *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), which dealt with a training program for railroad brakemen run by a railroad (clearly a private, for-profit company). The *Portland Terminal* Court held that:

3

> Section 3 (g) of the Act defines "employ" as including "to suffer or permit to work" and § 3 (e) defines "employee" as "any individual employed by an employer." **The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.** Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages. **So also, such a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit. But there is no indication from the legislation now before us that Congress intended to outlaw such relationships as these.** The Act's purpose as to wages was to insure that **every person whose employment contemplated compensation** should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of "employ" and of "employee" are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.

*Id.* at 152 (emphasis added).

As may be seen, the Supreme Court has never read into the definition of "employee" under the FLSA requirement that the volunteer services be performed for a governmental organization. In *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), the Eleventh Circuit followed *Portland Terminal* in holding that an individual who signed checks, made deposits and did bookkeeping for a company which leased realty (*i.e.*, for profit) with no contemplation of compensation was not an FLSA employee. *Accord Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996) (volunteer who restored furniture for non-governmental entity "which resulted in substantial profits when resold" held to be volunteer); *McQueen v. Licata's Seafood Restaurant*, 1 Wage & Hour Cases 2d (BNA) 1721 (E.D. La. 1992) (essence of test for determining if

4

individual is employee of for-profit restaurant is whether there is an expectation of compensation in return for efforts and economic dependency on employer). *See also Rogers v. Schenkle*, 162 F.2d 596 (2d Cir. 1947) (worker who intended his service as a helper doing platting work to be voluntary and without compensation was not an FLSA employee under *Portland Terminal*).

Inasmuch as Plaintiff's Complaint is based entirely on the premise that individuals may volunteer only for governmental organizations, and this premise is erroneous as a matter of law, his Complaint must be dismissed for failure to state a claim upon which relief can be granted.

## III. THE INAPPLICABLE PUBLIC EMPLOYEE-VOLUNTEER EXCLUSION

The FLSA goes beyond the well established law on volunteers as set forth above and in the public sector also provides for volunteer exceptions for public **employees** who also desire to serve as volunteers with related or other public agencies. Plaintiff cites to, but grossly misconstrues, 29 U.S.C. § 203(e)(4) which provides:

> (A) The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if --
>
> > (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
> >
> > (ii) **such services are not the same type of services which the individual is employed to perform for such public agency**.
>
> (B) **An employee of a public agency** which is a State, political subdivision of a State, or an interstate governmental agency may volunteer to perform services for any other State, political subdivision or interstate governmental agency, including a

> State, political subdivision or agency with which the employing
> State, political subdivision, or agency has a mutual aid agreement.

(Emphasis added.)

29 U.S.C. § 203(e)(4) is an exception for public employee-volunteers to 29 U.S.C. § 203(e)(1) which provides:

> Except as provided in paragraphs (2), (3) and (4), the term "employee" means any individual employed by an employer.

However, as shown above, under *Portland Terminal*, *Alamo Foundation*, *Patel*, *Williams*, and the other cited cases, there is **no** employer-employee relationship to begin with for volunteers (who like here are private persons, not Hospital employees seeking to volunteer on the side) who have no expectation of compensation or dependency on the Hospital.

Plaintiff in his Complaint (¶¶ 17-18) travels on the baseless theory that unless a hospital or other religious, charitable, or eleemosynary organization is a "public agency," there can be no volunteers. His statutory premise for this claim is clearly wrong.

Similarly, the regulations cited to by Plaintiff are of no help to Plaintiff. 29 C.F.R. Part 553 is entitled "State and Local Government **Employee** Regulations." The purpose of the regulations is to deal with changes to the FLSA which "apply to **employees** of State and local public agencies." 29 C.F.R. § 553.2 (emphasis added).

Regulations cited by Plaintiff deal with the limitations on public **employees** (not private persons) acting as volunteers for public agencies. 29 C.F.R.§§ 553.101(b), (c) and (d) discuss the restriction on public employees "volunteering" to perform the same type of services for the public agency employer and the Congressional intent to prevent "coercion or undue pressure upon individuals to 'volunteer' their services." 29 U.S.C. § 553.102 provides that a public

6

employee cannot "volunteer" with his employer to perform the same type of services which he is employed to perform by that employer. 29 C.F.R. § 533.103 gives guidance on what are the "same type of services."

However, 29 C.F.R. § 553.104 preserves a distinction for non-employee volunteers (similar to *Portland Terminal*, *Alamo Foundation*, *Patel*, etc.) and provides in regard to private persons, who are not public employees and desire to volunteer, as follows:

> Individuals **who are not employed** in any capacity by State or local government agencies often donate hours of service to a public agency for civic or humanitarian reasons. **Such individuals are considered volunteers and not employees** of such public agencies if their hours of service are provided **with no promise, expectation or receipt of compensation** for services rendered, except for reimbursement for expenses, reasonable benefits and nominal fees. . . . **There are no limitations or restrictions imposed by the FLSA on the types of services which private individuals may volunteer to perform for public agencies.**

(Emphasis added).

There is no issue or allegation whatsoever here relating to Hospital employees acting or being coerced or pressured to serve as "volunteers" at the Hospital. What is in issue here is private persons seeking to donate services to a hospital, analogous to 29 C.F.R. § 553.104, with "no promise, expectation, or receipt of compensation" who as a matter of established law "are considered volunteers and not employees" and as to whom there "are no limitations or restrictions imposed by the FLSA on the types of services which private individuals may volunteer to perform."

7

IV. **PLAINTIFF'S COMPLAINT MUST BE DISMISSED WITH PREJUDICE BECAUSE HE CANNOT ALLEGE NOR CAN HE PROVE THAT HOSPITAL VOLUNTEERS WERE EMPLOYEES UNDER THE ECONOMIC REALITY TEST**

It is virtually axiomatic that the test of whether someone is an "employee" under the FLSA is the "economic realities" test. *Alamo Foundation*, 471 U.S. at 301. *Accord Patel*, 803 F.2d at 635. As noted earlier, this determination is a question of law for the Court. *See, e.g., Patel*, 803 F.2d at 634.

There are essentially two ways that a plaintiff can show that he was an FLSA "employee" of someone for whom he performed services. The first is to show that he had an expectation of compensation. The second is to show that, if he did not have an expectation of compensation, he was somehow otherwise economically dependent on the organization for which he performed the services. In *Alamo Foundation*, the individuals performing services for the foundation were deemed to be "employees" under the economic realities test because they were "entirely dependent upon the Foundation for long periods," and they "must have" expected to receive compensation in the form of in-kind benefits (i.e., food, shelter, clothing, transportation and medical benefits). *Alamo Foundation*, 471 U.S. at 301-304.

Of direct application is the decision of the Eleventh Circuit in *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), where the plaintiff was performing bookkeeping and other similar services for a for-profit corporation. The Court held:

> . . . [T]he district court correctly concluded that [the plaintiff] was not an employee of Investment, Inc. **The evidence does not demonstrate that [the plaintiff] contemplated compensation for his acts,** *cf.*, Walling v. Portland Terminal Co. . . . **nor does it demonstrate as a matter of economic reality that Patel was dependent upon Investment, Inc.,** *cf.* Bartels v. Birmingham. . . .

8

*Id.* at 635 (emphasis added). *Accord Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) ("[I]n the application of social legislation, employees are those who as a matter of economic reality are dependent upon the business to which they render service").

In *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), the plaintiff-volunteer worked in a furniture restoration shop at the Salvation Army, improving the value of furniture "which resulted in substantial profits when resold." *Id.* at 1069. He also sorted food and clothing donations. He received food, clothing, shelter, and a small stipend. The Ninth Circuit followed *Alamo Foundation* and *Portland Terminal* and held that the plaintiff-volunteer "had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee." *Id.* at 1067. The Court of Appeals in that case forcefully rejected the plaintiff's belated attempt to claim during the case that he believed that he was in an employment relationship with the Salvation Army, characterizing this assertion as a "unilateral state of mind, which was not expressed to anyone at the time of his admittance, [and] is not sufficient to create a genuine issue of fact. . . ." *Id.* Obviously, it is the volunteer's purpose and expectations at the time he/she performs the services in question that determines whether he/she is performing them for his/her own purposes or in expectation of compensation. *Post facto* changes in attitude, such as the Plaintiff's in the instant case, will not convert what is otherwise a volunteer relationship into one of employment under the FLSA.

The almost universal acceptance of this proposition under not only the FLSA, but under federal law in general was summarized by the court in *Lippold v. Duggal Color Projects*, 1998 U.S. Dist. LEXIS 335 (S.D. N.Y. Jan. 14, 1998):

9

> Even before *O'Connor [v. Davis*, 126 F.3d 112, 115-6 (2d. Cir. 1997), *cert. denied*, 522 U.S. 1114 (1998)] **the case law agreed that a volunteer who is completely unpaid by anyone cannot be an 'employee' under federal law.** *Tony & Susan Alamo Foundation v. Secretary of Labor* . . . (**under the Fair Labor Standards Act 'employee' is only one who works in expectation of compensation**) . . . .

*Id.* at *4 (emphasis added). *See also O'Connor v. Davis, supra* (Plaintiff not defendant's employee for purposes of Title VII because of absence of "essential condition" of either direct or indirect economic remuneration or the promise thereof); *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir. 1990) ("Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist . . . .").

There is absolutely no allegation anywhere in Plaintiff's Complaint that he or any other volunteer of the Hospital or of any other entity had any expectation of compensation or that they were otherwise economically dependent on any organization mentioned in the Complaint. This alone is fatal, and Plaintiff's Complaint must be dismissed for failure to allege a material element necessary to support recovery under some viable legal theory.[3]

---

[3] In making allegations in his Complaint about volunteer services beyond direct patient aid/comfort which have an alleged business purpose, it appears that the Plaintiff does not recognize the difference between the test to determine if an entity is an "enterprise engaged in commerce" for purposes of determining the Act's coverage and the test to determine if an employer-employee relationship exists for purposes of determining liability for minimum wage and overtime under the Act. These are two distinct issues and tests. "An individual may work for a covered enterprise and nevertheless not be an 'employee'." *Alamo Foundation*, 471 U.S. at 299. The Eleventh Circuit Court of Appeals takes exactly the same position: "[U]nder the plain words of the statute the criteria for establishing an enterprise are much broader than the criteria necessary to establish liability," which requires the existence of an employer-employee relationship. *Patel*, 803 F.2d at 636-637. An "enterprise" under the FLSA is, of course, "related activities performed (either through unified operations or common control) ... for a common

(continued...)

That deficiency, however, is not all. Plaintiff clearly admits facts that make it impossible for him to have been an employee of the Hospital. Plaintiff states in his Complaint, he "**volunteered** to perform labor" at University Hospital and Medical Center, working "every Wednesday **for approximately 4 hours**" and that his "**sole purpose** was to provide aid and comfort to sick and recovering patients. . . ." (Complaint ¶¶ 19 & 21). Obviously, (1) Plaintiff did not expect to be compensated at the time he performed these volunteer services, (2) there is absolutely no way that 4 hours per week can translate into economic dependency, and (3) he clearly performed these services "solely for his personal purposes" rather than for the Hospital's purposes. Accordingly, Plaintiff's Complaint in this matter must not only be dismissed, but must be dismissed with prejudice.

---

[3](...continued)
business purpose...." 29 U.S.C. § 203(r). There are numerous court decisions finding that various charitable, religious or educational institutions are not liable to individuals who perform services for them because these institutions do not have a business purpose, and are therefore not "enterprises" covered by the Act. The Supreme Court addressed this same "enterprise" issue in *Alamo Foundation* where it made it clear that the FLSA reaches only the ordinary commercial activities of these eleemosynary, religious, or educational organizations.

No one quarrels with that analysis in this case. Were University Hospital an eleemosynary, religious or educational organization, the question of whether the duties performed by its volunteers were in support of its "ordinary commercial" activities and whether it derived any economic advantage from them would be relevant to whether or not it was an "enterprise" within the meaning of the FLSA. That, however, is not the issue here. Accepting that University Hospital is an enterprise engaged in commerce subject to the Act's coverage, this Court must move on, as the Supreme Court did in *Alamo Foundation* to the real issue in this case which is whether Plaintiff has alleged anything from which it could be inferred that the volunteers had an expectation of compensation and/or were otherwise somehow economically dependent upon the Hospital, and were therefore employees within the Act. The fact that Plaintiff has failed to make any such allegations dooms his Complaint.

## V. THE FAILURE TO JOIN UNIVERSITY HOSPITAL OR ANY OTHER HOSPITAL AND IMPROPER CLASS CLAIMS

To maintain a representative action under 29 U.S.C. § 216(b) of the FLSA in the Eleventh Circuit, Plaintiffs must (but clearly do not) show a "'reasonable basis' for their claim of class-wide" FLSA violations. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996), *cert. denied*, 519 U.S. 987 (1996). *Grayson* followed *Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir. 1983), where the Court of Appeals affirmed the district court's denial of a request for the circulation of a court-approved opt-in notice, holding in an FLSA case that "counsel's unsupported assertions that FLSA violations were widespread" were insufficient and did not constitute a "reasonable basis" for proceeding on a class claim. Plaintiff also must "satisfy [the court] that there are other **employees** of the . . . employer **who desire to 'opt-in'** and who are **'similarly situated'** with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991) (emphasis added).

Additionally, the Court has a responsibility to avoid "stirring up" litigation:

> As a matter of sound case management a court should, before offering such assistance, make a preliminary inquiry into **whether a manageable class exists**. Moreover, the sending of notice and consent forms to potential plaintiffs implicates concerns in addition to orderly case management. The courts, as well as practicing attorneys, have a responsibility **to avoid "stirring up" of litigation** through unwarranted solicitation . . . .

*Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264 (D. Minn. 1991) (emphasis added). This responsibility to avoid "stirring up" litigation was recognized in the Eleventh Circuit in *Brooks v.*

*Bellsouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995), *aff'd without opinion*, 114 F.3d 1202 (11th Cir. 1997).

Here, Plaintiff (a New York attorney represented by a New York-based law firm) seeks to "stir up" litigation by true volunteers at hospitals; however, class treatment is not appropriate because there is clearly no proper or manageable class. The "Substantive Allegations" of the Complaint reflect that:

1. Plaintiff "volunteered to perform labor at allegedly Columbia-owned University Hospital and Medical Center" (Complaint ¶ 19).

2. Plaintiff was one of approximately 150 persons who performed volunteer services at University Hospital (Complaint ¶ 20).

3. Plaintiff received a brief orientation and received literature on the University Hospital volunteer program (Complaint ¶ 21).

4. Plaintiff worked at University Hospital every Wednesday for four hours for four months in 1999 (Complaint ¶¶ 19 & 21).

Yet, Plaintiff brings no claim against University Hospital and Medical Center. Assuming for purposes of this motion that University Hospital and Medical Center is a Columbia-owned hospital, as alleged, or affiliate, it remains improper to direct the allegations here against Columbia.[4] The "Substantive Allegations" of the Complaint show that University Hospital was the primary participant in Plaintiff's volunteer arrangement and would be an indispensable party.

---

[4] As noted, Columbia/HCA Healthcare Corporation, Inc. is an improper party to this suit. The ownership allegations are assumed *arguendo* as pled only for the purpose of this motion to dismiss.

*Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985). Yet, this suit is improperly brought against Columbia.

Plaintiff's unfounded strategy can be discerned once it is considered that the class claim is directed at

> all similarly situated persons who worked as hospital volunteers at any of Columbia's hospitals in the United States from January 26, 1997 to the present.

(Complaint ¶ 7). This alleged class is described as including thousands of volunteers at as many as 300 unnamed hospitals (Complaint ¶ 8). However, of the six other south Florida hospitals referred to in the Complaint (¶ 26), the volunteer arrangements are described differently on a hospital-by-hospital basis. For example, at two of the hospitals (St. Lucie Medical Center and Raulerson Hospital), the Complaint shows that there are auxiliary volunteer organizations. Of course, none of the hospitals or auxiliary volunteer organizations are named as defendants. That is because Plaintiff seeks to "stir up" nationwide litigation, but without joining the actual organizations that deal with volunteer arrangements at each location.

In *Saunders v. Bellsouth Advertising & Publishing Corp.*, 1998 U.S. Dist. LEXIS 20523 (S.D. Fla. 1998), Judge Ursula Ungaro-Benages dismissed employment class action allegations on a motion to dismiss for failure to state a class action claim as a matter of law. In *Saunders*, the plaintiffs sought to represent a class of African-American employees and applicants who from 1994 applied for better paying jobs, sought training necessary for promotions, or were disciplined or terminated for protesting discriminatory practices. Viewing the complaint in a light most favorable to plaintiffs, Judge Ungaro-Benages in *Saunders* held that because of the many individualized factual inquiries, the alleged common issue of an unlawful policy broke

down into an unmanageable variety of legal and factual issues. Here, the predominantly individual factual issues would go well beyond the issues there, such as "the employment histories of the various class members," job descriptions and employment processes of one employer. Here, the Complaint lists seven (7) hospitals, mentions as many as 300 throughout the United States, and alleges that "thousands" of "similarly situated persons" will join this case (Complaint ¶5). Clearly, the compensation expectations, personal purposes and economic dependencies, and volunteer arrangements and services of every class member and hospital would have to be reviewed. Thus, despite the conclusory allegations in the Complaint (¶¶ 10, 11, 12) here, as Judge Ungaro-Benages in *Saunders* further held, "it seems clear to the court based on the complaint" that the employment claims are not common or typical, but individualized determinations. *Saunders* 1998 U.S. Dist. LEXIS 20523 at *3, n.2. The individualized factual inquiries, which the court held warranted dismissal in *Saunders*, would clearly predominate to even a greater and more unmanageable extent here given the geographic spread (the entire country) of the class and the need to compare not only volunteers' histories, purposes, expectations and dependencies, but also the varied volunteer arrangements at each of hundreds of unnamed hospitals.

Thus, the class claims must be dismissed, as an unwarranted and unmanageable attempt to "stir up" baseless nationwide litigation.

WHEREFORE, Defendant Columbia/HCA Healthcare Corporation, appearing specially, moves this Court to dismiss the Complaint and in the absence of the necessary elements of a claim for relief, including an expectation of compensation and dependency on the Hospital, to dismiss the class claims in their entirety with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by U.S. First Class Mail upon:

> Mr. Kenneth J. Vianale
> Mr. Jack Reise
> Milberg Weiss Bershad Hynes & Lerach LLP
> 5355 Town Center Road, Suite 900
> Boca Raton, Florida 33486
>
> Mr. Melvyn I. Weiss
> One Pennsylvania Plaza
> New York, New York  10119

on this 6th day of March, 2000.

_____
Attorney

119728.1

        Respectfully submitted,

        FORD & HARRISON LLP

By: _____
        Edmund J. McKenna
        Florida Bar No. 0845922
        Dawn Siler-Nixon
        Florida Bar No. 0993360

For the firm

        101 East Kennedy Boulevard
        Suite 900
        Tampa, Florida 33602
        Telephone: (813) 261-7800
        Facsimile: (813) 261-7899

OF COUNSEL:

FORD & HARRISON LLP
516 Ingraham Building
25 Southeast Second Avenue
Miami, Florida 33131
Telephone: (305) 379-3811
Facsimile: (305) 358-5933