UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 00-6124-CIV-ZLOCH/SELTZER

**NIGHT BOX FILED**

APR 0 4 2000

CLERK, USDC / SDFL / WPB

ALEXANDER ELTMAN, On Behalf of Himself )
and All Others Similarly Situated, )
)
Plaintiff, )
vs. )
)
COLUMBIA/HCA HEALTHCARE )
CORPORATION, INC., )
)
Defendant. )
_____ )

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Alexander Eltman, respectfully submits this Memorandum of Law in Opposition to the Motion of Defendant Columbia/HCA Healthcare Corporation, Inc. ("Columbia"), to dismiss the Complaint.

### I. INTRODUCTION

Volunteerism plays an important role in society in America with individuals willing to donate their time and experience to assist others. It is particularly recognized in America's hospitals where volunteers can provide aid and comfort to those that are ill and can be served well by the efforts of volunteers. But contrary to Columbia's claims, this action does not attack the foundation of volunteerism in this country. Rather, this action serves to seek redress for the practices of a publicly-traded corporation that takes advantage of well-intentioned volunteers. Columbia uses volunteer time, not to provide aid and comfort to patients, but to perform menial tasks that would otherwise have to be performed by paid employees. The benefits to Columbia



are obvious: reduced expenses and increased profits. Columbia reported $16.7 billion in revenue from continuing operations in 1999. Columbia also reported its net income in 1999 at $159 million. In an effort to boost its net income, Columbia took advantage of its hospital volunteers who are exempt from the federal wage laws only if they provide services for the comfort and welfare of patients. The U.S. Department of Labor has made clear, as discussed below, that volunteer status has been limited in the hospital area to those who volunteer "to minister directly to the comfort of the patients in a manner not otherwise provided by the hospital." Opinion Letter, Department of Labor, Office of Enforcement Policy, dated June 28, 1996 ("DOL Opinion letter") (Attached hereto as Exhibit A). As alleged, Columbia has used volunteers in all aspects of its hospital business and thus is not entitled to any exemption under the wage laws.. See Complaint, ¶¶ 22-28. Plaintiff and all others similarly situated are entitled, therefore, to be paid wages under the Fair Labor Standards Act of 1938 ("FLSA"). The complaint adequately sets forth this claim and should be sustained.

## II.   FACTS

Plaintiff Alexander Eltman worked as a "volunteer" at Columbia-owned University Hospital and Medical Center ("University Hospital"), in Tamarac, Florida, from February to May 1999. (Complaint, ¶¶ 19, 21). Eltman was assigned to work in the hospital's admitting room, where he greeted patients and took their insurance and prescription drug cards. (Complaint, ¶ 21). Eltman would photocopy patients' insurance and prescription drug cards and then deliver copies to the front desk where a paid employee would pick them up. (Complaint, ¶ 21). Eltman also escorted patients to various departments where medical procedures would be performed. (Id.)

Many other volunteers at University Hospital performed a variety of unskilled tasks. (Complaint, ¶ 8). The director of volunteer services at University Hospital, Anne Ortolino, explained to Eltman that volunteers were placed wherever there was a shortage of labor (Id.) Many volunteers at the hospital worked in the gift shop selling gift items and candy to visitors. (Id.)

Little of Eltmans' volunteer labor was devoted directly to ministering to patients' aid, comfort and welfare. (Complaint, ¶ 23). Instead, Eltman's labor was devoted to tasks which but for his services and those of other volunteers (there were approximately 150 at University Hospital) would have to have been performed by wage-earning employees. (Complaint ¶ 23). Indeed, a handbook that Eltman received from the hospital, "A Handbook for Hospital Volunteers," confirmed that little of a volunteer's time would be devoted to ministering directly to the comfort of patients. The handbook states on Page 3 that:

> Volunteers may be given assignments in any of the following areas:
>
> > Nursing Units
> > Laboratory
> > Imaging Services
> > Rehabilitation Services
> > Business Office
> > Emergency Department
> > Health Information Management
> > Pharmacy
> > Food and Nutrition Services
> > Patient Case Management
> > Gift Shop
> > Information Desk
>
> > \*   \*   \*   \*

(Complaint, ¶ 24).

- 3 -

The experience of volunteers at University Hospital was not isolated to that hospital. Numerous volunteers, in this District alone, were assigned by Columbia to perform tasks having nothing to do with ministering directly to a patient's comfort. (Complaint, ¶ 26) (Columbia Hospital, (West Palm Beach));   St. Lucie Medical Center Auxiliary; Lawnwood Regional Medical Center; Auxiliary at Raulerson Hospital; JFK Medical Center; and Palms West Hospital). Complaint, ¶ 26(a)-(f). As the owner, operator and manager of its for-profit hospitals in Florida and other states, Columbia enforces its policy of using volunteer labor to perform routine manual labor that would otherwise require the employment of wage-earning workers and which does not come within any exception to the FLSA. (Complaint, ¶¶ 27-28).

### III.   ARGUMENT

#### a)   The Standard on a Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the allegations of the complaint must be construed in the light most favorable to plaintiff, and all factual allegations are taken as true. Scheuer v. Rhodes, 416 U. S. 232, 236 (1974); Bank v. Pitt, 928 F.2d 1108, 1111-1112 (11th Cir. 1991). Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Conley v. Gibson, 355 U. S. 41, 45-46 (1957).

#### b)   The FLSA applies to Hospital Volunteers Who Perform Tasks Otherwise Performed by Paid Employees

The U.S. Supreme Court has struggled with the breadth of coverage of the FLSA, enacted in 1938. In Walling v. Portland Terminal Co., 330 U.S. 148 (1947), the U.S. Supreme Court

decided whether a person working in a railyard as a trainee was entitled to wages under the FLSA. That case, however, is distinguishable from the case at bar. The Court determined in Walling that the scope of the FLSA was not so broad as to "sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." Id. at 152. Importantly, the Court noted that the employer, a railroad, received no immediate advantage from the volunteer work performed and should not be obligated to pay wages to the yard brakemen trainees. It was recognized that the training received was an absolute prerequisite to receiving paid employment as a yard brakeman. Consequently, the Court concluded that the FLSA "was not intended to penalize railroads for providing, free of charge, the same kind of instruction at a place and in a manner which would most greatly benefit the trainees." Id. at 153.

Here, Columbia receives an immediate advantage from the work performed by its volunteers. If volunteers were not available to perform various menial tasks including administrative duties, Columbia would have to hire paid employees to perform those functions. As such, the hospital volunteers are covered by the FLSA. Indeed the DOL's Opinion Letter makes clear that "volunteers" who work in a hospital gift shop do not minister directly to the comfort of the patient, but instead perform work done by other paid employees for the benefit of the hospital's business. Such individuals were accordingly subjected to the requirements of the FLSA. (See Exhibit A hereto). This opinion related to not-for-profit hospitals and applies here a fortiori.

In Tony & Susan Alamo Foundation et al. v. Secretary of Labor, 471 U.S. 290, 302-303 (1985), the Court held that commercial activities performed by "associates" of a non-profit

- 5 -

religious foundation required the foundation's compliance with the FLSA. The Supreme Court reasoned that these associates (drug addicts, derelicts and criminals in rehabilitation) were working in contemplation of compensation. The Supreme Court seems to apply an "economic reality test." See id. at 301. In finding that the volunteers were employees under the FLSA, the Supreme Court was unconcerned with the foundation's position that this would have a chilling effect on volunteerism.

> Nor is there any reason to fear that, as petitioners assert, coverage of the foundation's business activities will lead to coverage of volunteers who drive the elderly to church, serve church suppers, or help remodel a church home for the needy. ...Ordinary volunteerism is not threatened by this interpretation of the Statute.

Id. at 302.

The FLSA only applies to ordinary commercial activities of religious organizations by those who engage in those activities in expectation of compensation.

> The Solicitor General states that in determining whether individuals have truly volunteered their services, the Department of Labor considers a variety of factors, including the receipt of any benefits from those for whom the services are performed, whether the activities are less than full time occupation, and whether the services are of the kind typically associated with volunteer work. *The Department has recognized as volunteer services those of individuals who help to minister to the comfort of the sick, elderly, indigent, infirm, or handicapped and those who work with retarded or disadvantaged youths.*

Id. at 303, n. 25. (Emphasis added).

Columbia argues that Alamo Foundation should be read in a vacuum with a rote application of the so-called economic realities test. But a fairer interpretation of Alamo Foundation is that volunteers, whether working in for-profit or not-for-profit hospitals, are exempt from coverage under the FLSA, but only when performing labor that could be construed

as "ordinary volunteerism." Columbia cannot in good faith argue that volunteers, performing work that would otherwise be performed by paid employees, e.g., working in the gift shop or taking insurance documentation and information from patients (Complaint, ¶¶ 21-22), are engaged in "ordinary volunteerism" contemplated by the Supreme Court in Alamo Foundation. Alamo Foundation held that the FLSA applies to "ordinary commercial activities"; if volunteers are asked to perform such labor at for-profit hospitals, then the volunteers are not exempt from being paid wages under the FLSA.

This is precisely the position taken by the U.S. Department of Labor ("DOL") in an opinion letter dated July 28, 1996 addressing the very issues on this motion. Responding to an inquiry as to the use of volunteers in gift shops of a not-for-profit hospital, (which were also staffed with paid employees), the DOL explained that:

> [i]n administering the FLSA, the Department of Labor follows this judicial guidance in the case of individuals serving as unpaid employees in various community services. Individuals who volunteer or donate their services, usually on a part-time basis, for public service, religious, or humanitarian objectives, not as employees and without contemplation of pay, are not considered employees of the religious, charitable, and similar not-for-profit organizations which receive their services.

Nevertheless, the Department of Labor, mindful of both Walling and Alamo Foundations, made clear that hospital volunteers who did more than "minister directly to the comfort of patients", but instead performed labor that was also provided by the hospital through paid employees, fell within the requirements of the FLSA:

- 7 -

>[The Department] does not consider individuals who volunteer to minister directly to the comfort of the patients in a manner not otherwise provided by the hospital to be employees under the FLSA. **This could include reading to the patients, writing letters for the patients or entertaining the patients, which are duties not ordinarily performed by nurses or other such employees of the hospital. The work in the gift shop, however, does not involve ministering directly to the comfort of the patients and is on occasion performed by paid employees of the hospital. Therefore, individuals working in the gift shop are employees under the FLSA subject to the requirements of the FLSA.**

(Exhibit A) (Emphasis added).

Importantly, the DOL also noted its "longstanding policy of limiting volunteer status to those individuals performing charitable activities for not-for-profit organizations." Columbia, a for-profit corporation, is however liable to pay its "volunteers" wages under 29 U.S.C. §206(a).[1] The Complaint sufficiently alleges that Columbia has employed volunteers in ways well beyond the activities sanctioned by the DOL, which was limited to such direct patient comfort as reading to patients, writing letters for patients or entertaining them. The Complaint alleges that Columbia routinely assigned volunteers to perform tasks having nothing to do with patient

---

[1] In an analogous situation, an action was brought by the Commissioner of the New York State Department of Health ("DOH") against an association of proprietary(for-profit) nursing homes. The DOH was concerned about the use of volunteers in proprietary nursing homes and strictly limited their use to work "not directly the work of hospital personnel." In Greater New York Health Care Facilities Association, Inc., v. Axelrod, 770 F. Supp. 183 (S.D.N.Y. 1991), the DOH Memorandum 69-25 summarized the guidelines for volunteers as follows: "In general, volunteers may be used to assist with services designed to contribute to the mental, social and emotional well being of patients in ways which supplement, but do not replace the regular job responsibilities of nursing home personnel." The limitation on volunteers only applied to proprietary as opposed to non-profit nursing homes. The District Court accepted the DOH's contention that for-profit nursing homes should be treated differently because "presumably more limited financial resources of not-for-profit nursing homes justifies allowing greater utilization of volunteers that in for-profit facilities." Id. at 188.
Although Axelrod arose under state labor laws, it is instructive on the distinction between not-for-profit and for-profit facilities and the limitation of volunteer work to that which is not otherwise performed by paid employees.

comfort and welfare, and everything to do with increasing Columbia's profits. See Complaint, ¶¶ 22-28 (volunteers used in the laboratory, business office, pharmacy, gift shop, and information desk). These tasks subject Columbia to the requirements of the FLSA.

As the agency responsible for the administration and enforcement of the FLSA, the Department of Labor's opinions are entitled to deference and may be relied upon by the Court for guidance. See Batterton v. Francis, 432 U.S. 416, 425 n.9 (1977)("Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise."). The Court should defer to the Department of Labor's opinion letter since it was issued well after the U.S. Supreme Court opinion in Alamo Foundation and in full recognition of the opinion's meaning and scope. The DOL nevertheless found that employment of "volunteers" in jobs such as the gift shop, and other areas in which a hospital regularly employed paid laborers, implicated the FLSA and required wages to be paid to these "volunteer."

Columbia cites several other cases in support of its position. None of the cases cited by Columbia, however, involve volunteers in hospitals, precisely the issue addressed in the DOL opinion letter. Although the Eleventh Circuit, in Patel v. Wargo, 803 F.2d 632 (11th Cir. 1986), found that an individual who performed a minimal amount of work for a company as an accommodation to his employer was not an employee of that company under the FLSA, the Eleventh Circuit did not undertake any legal analysis of Walling and Alamo Foundation. The work involved was de minimus so as not to raise the specter of an employer-employee relationship. Certainly, Patel did not raise the concerns at issue in Alamo Foundation and certainly did not address hospital volunteers or ordinary volunteerism generally. The other cases

- 9 -

cited by Columbia (<u>Williams</u>, <u>McQueen</u>, <u>Rogers</u> and <u>Bartels</u>), were issued prior to the DOL opinion letter, and none of these cases arose in the context of hospital volunteers.

Moreover, the DOL opinion letter explicitly stated what was implicit in <u>Walling</u> and <u>Alamo Foundation</u>. Hospitals can utilize volunteers in their facilities, but only to the extent that they employ that labor directly to the comfort of patients in a manner not otherwise provided by the hospital through paid employees. Volunteer work in a capacity beyond providing aid and comfort to patients does not fall within the ambit of "ordinary volunteerism" and is thus not exempt under the FLSA. The complaint adequately states a claim for relief under this analysis. <u>See</u> ¶¶ 21-28.

### c) **Columbia is a Proper Party and has Otherwise Waived its Defenses**

Columbia also claims that it has been improperly named as a defendant in this action and that plaintiff has failed to join University Hospital Ltd. as an indispensable party to this action. Columbia's claims are, however, belied by its own public filings with the Securities and Exchange Commission.[2]

First, University Hospital Ltd. is a Limited Partnership authorized to do business in the State of Florida. University Hospital Ltd. was created in January 1990 after Columbia acquired University Hospital located in Tamarac, Florida. <u>See</u> 1990 Annual Report to Shareholders filed with the SEC on July 23, 1991 at * 16 (Vianale Aff., Exhibit A) (Affidavit of Kenneth J. Vianale, accompanying this memorandum of law). Columbia controls University Hospital's operations and reports University Hospital Ltd.'s financial results as part of Columbia's consolidated

---

[2] In considering a motion to dismiss, courts may consider documents filed with the SEC. See <u>Bryant v. Avado Brands, Inc.</u>, 187 F.2d 1272, 1280 (11th Cir. 1999).

operating results. See 1992 form 10-K filed with the SEC on April 19, 1993 at * 3 (Vianale Aff., Exhibit B). Additionally, Columbia specifically states that all references in its SEC filings to "Columbia/HCA" or the "Company" include all of its affiliates, including University Hospital Ltd. See 1999 form 10-K, filed with the SEC on March 30, 2000 at 36. (Vianale Aff., Exhibit C) Thus, despite Columbia's assertions, it is not University Hospital Ltd. that was the "primary participant in Plaintiff's volunteer arrangement," nor was it the beneficiary of Columbia's misuse of its hospital volunteer/workforce. Columbia reports the financial results of University Hospital Ltd. (and its other affiliates) on Columbia's consolidated operating results, and is thus the primary benefactor of the volunteer workforce.

Moreover, Columbia attempts to "specially appear" to assert other defenses, but its failure to raise its defense of lack of personal jurisdiction in its motion constitutes a waiver of this defense under Fed.R.Civ.P. 12(h)(1). In its motion to dismiss, Columbia sought dismissal under Fed.R.Civ.P. 12(b)(1)(lack of jurisdiction over the subject matter), 12(b)(6)(failure to state a claim upon which relief can be granted) and 12(b)(7)(failure to join a party under Rule 19). Yet Columbia has not sought dismissal under 12(b)(2) for lack of personal jurisdiction even though it claims that it is not the proper party to this action because it allegedly does not own or operate University Hospital and Medical Center. Therefore, this argument should be disregarded by the Court. See Arkwright Mutual Insurance Company v. Scottsdale Insurance Company, 874 F. Supp. 601, 604 (S.D.N.Y. 1995).

### d) Columbia's Attacks on Maintenance of this Case as a Collective Action are Improper

Columbia also argues that the class claims should be dismissed because plaintiff has failed to show a reasonable basis for class-wide FLSA violations. To begin with, it should be noted that this is not a class action under Rule 23, Fed..R.Civ.P. Instead, it is a "collective action," authorized by the FLSA itself, 29 U.S.C. § 216(6), and is governed by more liberal standards.

Columbia's argument that this case should not be allowed to proceed and that this Court should not "incite litigation," is transparent and baseless. In Grayson v. K-Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996), the court determined that plaintiff established a reasonable basis for an opt-in class based on the evidentiary record. Similarly, in Haynes v. Singer Co., Inc., 696 F.2d 884, 888 (11th Cir. 1983), the Eleventh Circuit affirmed the denial of a request for circulation of a court-approved opt-in notice because "[t]here was no evidence before [the court] in February of 1980 that would have justified him doing so."[3] Accordingly, Columbia's arguments are premature, to say the least, at this stage of the litigation. Columbia also mistakenly relies on Sanders v. Bellsouth Advertising & Publishing Corp., Case No. 98-1885-

---

[3] See also Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1564 (11th Cir. 1991)(denial of "opt-in" motion prior to trial); Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)("A factual showing is particularly appropriate in this case given that defendants have challenged the allegations of the complaint by submitting affidavits and deposition testimony tending to show that no widespread practice of discrimination exists as to the defendant companies."); Brooks v. Bellsouth Telecommunications, Inc., 164 F.R.D. 561, 567 (N.D. Ala. 1995), aff'd without opinion, 114 F.2d 1202 (11th Cir. 1997)("Plaintiff has failed to put forth such evidence and he is therefore not entitled to have court authorized notice sent to potential opt-in plaintiffs").

CIV-UNGARO-BENAGES, 1998 U.S. Dist. LEXIS 20523 (S.D.Fla. November 12, 1998) where Judge Ungaro-Benages dismissed a <u>class</u> action complaint under Fed.R.Civ.P. 23(b)(2) & (b)(3), and <u>not</u> a <u>collective</u> case brought under 29 U.S.C. § 216(b). As recognized by the Eleventh Circuit in <u>Grayson</u>, the "similarly situated" requirement of 216(b) is considerably less stringent than the requirement of Rule 23(b)(3) that common questions predominate. <u>Grayson</u>, 79 F.3d at 1096 (citing <u>Flavel v. Svedala Indus., Inc.</u>, 875 F. Supp. 550, 553 (E.D.Wis. 1994)).

Plaintiff welcomes the opportunity to demonstrate to the Court that a reasonable basis exists to send an opt-in notice to the class. At this stage of the proceedings, however, without any discovery or development of a factual record, Columbia's assertions that the class allegations be dismissed are unfounded.

## IV. CONCLUSION

For all the foregoing reasons, the Court should deny defendant's motion to dismiss in all respects.[4]

Dated April 4, 2000

        Respectfully submitted,

        MILBERG WEISS BERSHAD
         HYNES & LERACH LLP

        By: /s/ Kenneth J. Vianale
         Kenneth J. Vianale
         (Fla. Bar No. 169668)
         kjv@mwbhlny.com
         Jack Reise
         (Fla. Bar No. 058149)
         jr@mwbhlny.com

        5355 Town Center Road
        Suite 900
        Boca Raton, FL 33486
        Tel: 561-361-5000
        Fax: 561-367-8400

        - and -

        Melvyn I. Weiss
        One Pennsylvania Plaza
        New York, NY 10119
        Tel: 212-594-5300
        Fax: 212-868-1229

        Attorneys for Plaintiff

---

[4] In the event that the Court determines that the Complaint contains pleading deficiencies, plaintiff respectfully requests that he be given leave to file an amended complaint under Fed.R. Civ.P. 15(a).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss," and Affidavit of Kenneth J. Vianale were sent by Federal Express mail on April 4, 2000, to:

>   Edmund J. McKenna
>   FORD & HARRISON LLP
>   101 E. Kennedy Boulevard
>   Suite 900
>   Tampa, FL 33602
>   813-261-7800 - Telephone
>   813-261-7899 - Fax
>
>   Attorney for Defendant
>   Columbia/HCA Healthcare
>   Corporation, Inc.

_____
Kenneth J. Vianale

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE