UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No.00-6124-CIV-ZLOCH/SELTZER

ALEXANDER ELTMAN, on behalf of
himself and all others similarly situated,

        Plaintiff,

v.

COLUMBIA/HCA HEALTHCARE
CORPORATION, INC.,

        Defendant.

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

**I.    Plaintiff Has Abandoned the Theory of His Complaint[1]**

In apparent recognition that his Complaint fails to state a claim upon which relief can be granted, Plaintiff has abandoned the original theory upon which his Complaint was based, and now asserts a wholly new but equally invalid theory. Plaintiff claimed in his Complaint that volunteers could "volunteer" only for public agencies and that:

> [T]he FLSA provides **no exemption for religion, charitable or eleemosynary organizations** . . . that compete with other for-profit businesses.

---

[1] Plaintiff's response to the Motion to Dismiss is untimely and need not be considered by this Court. The Motion to Dismiss was served on March 6, 2000. As a result, Plaintiff's response was due on March 23, 2000. Plaintiff moved to extend the time to respond to the Motion to Dismiss which was denied by this Court, and, presumably in reliance upon that Motion, Plaintiff did not timely respond to the Motion to Dismiss. However, after this Court denied Plaintiff's Motion for an extension, Plaintiff served his Memorandum on April 4, 2000, but has failed to request or obtain leave to file out of time. As a result, Plaintiff's response should simply be struck.

(Complaint ¶18; emphasis added). Plaintiff's now-abandoned position was that anyone who "volunteers" for **any** organization other than a public agency is an "employee" of that organization for purposes of the FLSA. Plaintiff recognizes in his response the fallacy of that position but now attempts to assert the need for an analysis of the duties performed by individual volunteers to determine their status under the FLSA. This attempt must fail as well. However, Plaintiff's new theory is no more sound than his abandoned theory.

II.     **Plaintiff's Unsupported "Direct Aid or Comfort Test"**

Plaintiff's new theory, never adopted by a single court, is that whether a person is a "volunteer" or an "employee" turns solely on the nature of the activities the individual performs and whether those activities provide "direct" (apparently as opposed to "indirect") aid or comfort to patients. Plaintiff claims that if the volunteer "performs menial tasks" rather than providing direct "aid and comfort to patients" then the "volunteers" are "employees" for purposes of the FLSA and must be paid minimum wage (Plaintiff's Memorandum, p. 1). Plaintiff's new theory is based solely on an Opinion Letter by Officer of Enforcement Policy, Fair Labor Standards Team Member, Daniel F. Sweeney. An Opinion Letter which, without benefit of a single citation to any statute, regulation or case law, ignores the established judicial test and instead asserts a new test (under which the determination of whether a person is "volunteer" or an "employee" is based on whether their activities are "direct" aid or comfort) and is simply wrong.

This Direct Aid or Comfort Test was rejected (or, at a minimum, certainly not adopted) by the United States Supreme Court in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985). Indeed, the Court noted that:

2

> The Solicitor General states that in determining whether individuals have truly volunteered their services the Department of Labor considered a variety of factors, including the receipt of any benefits from those for whom the services are performed, whether the activity is a less than full-time occupation, **whether the services are of the kind typically associated with volunteer work. The Department has recognized as volunteer services those of individuals who help to minister to the comfort of the sick, elderly, indigent, infirm, or handicapped, and those who work with retarded or disadvantaged youth.**

*Alamo Foundation*, 471 U.S. at 303, n. 25 (emphasis added). The Court could have chosen to adopt an activities test to distinguish "volunteers" from "employees." The Court did not do so. **Rather,** the unanimous United States Supreme Court held that:

> **An individual who without promise or expectation of compensation, but solely for his personal purpose or pleasure,** worked in activities carried on by other persons either for their pleasure **or profit is outside the sweep of the Act**.

*Id.* at 295 (citations omitted; emphasis added). Accordingly, it is not ***an activity-by-activity analysis*** or ***whether activities are direct or indirect aid or comfort*** (whatever that may mean) which determines whether one is a volunteer -- rather, it is whether there is an ***expectation of compensation or economic dependence*** that is the critical inquiry in determining whether one is an employee or volunteer.

Thus, in *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), where the plaintiff was performing bookkeeping and other similar services for a for-profit corporation, the court determined that the plaintiff was not an employee because he contemplated no compensation for his acts and, as a matter of economic reality, was not dependent on the alleged employer. This despite the fact that bookkeeping provided no "aid & comfort" to any patient or other individual. The same result was

reached in *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), where the plaintiff volunteered to work in a furniture restoration shop generating "substantial profits."[2]

A good example of why Plaintiff's new theory is wrong is contained in ***Plaintiff's Memorandum***. On page 5 of Plaintiff's Memorandum In Opposition, he argues that:

"If volunteers were not available to perform various menial tasks . . . [University Hospital] would have to hire paid employees to perform those functions." However, without recognizing the contradiction, Plaintiff immediately thereafter cites *Alamo Foundation*, for the proposition that:

> Nor is there any reason to fear that, as petitioners assert, coverage of the Foundation's business activities will lead to coverage of **[1] volunteers who drive the elderly to church, [2] serve church suppers, or [3] help remodel a church home for the needy**.

Id. at 302 (emphasis added). Under Plaintiff's new theory, "menial tasks," endorsed as volunteer activities in *Alamo Foundation*, such as acting as a **food server**, **transporting people**, and **remodeling homes**[3] would not be performed by "true" volunteers but only by "employees" because they do not provide "direct aid and comfort" and could have been performed by employees absent the volunteer services.

And, in Plaintiff Eltman's own case, he would require an analysis of each and every activity in which he was involved on a weekly basis during his four volunteer hours per week. He apparently claims that he was not providing aid or comfort to patients when he escorted or transported them

---

[2]   This also holds true for the non-employee railroad yard brakemen trainees in *Walling v. Portland Terminal*, 330 U.S. 148 (1997), who did actual work, became certified as competent, and received retroactive pay when hired.

[3]   Therefore, Plaintiff must argue, people like former President Jimmy Carter who volunteer for Habitat for Humanity and help build homes have a minimum wage claim for their services they perform because those activities do not "directly" involve the "comfort" of less fortunate people.

(including by wheelchair) to areas where medical procedures were performed (Complaint ¶ 21), but would be providing aid and comfort while reading to these same individuals. Similarly, he asserts that his activity of greeting persons so that they could be admitted for medical treatment (Complaint ¶ 21) is not providing "aid" and comfort, but engaging in conversations with patients apparently is. Under Plaintiff's new test, the well-established judicial tests under which he would be a volunteer because he contemplated no compensation and was not economically dependent whatsoever on the hospital, would completely disappear and be of no significance whatsoever. And, this would hold true for volunteers on a nationwide basis, as Plaintiff would no doubt claim that the Court instead must analyze each activity of each individual.

Indeed, the Opinion Letter itself reflects why the traditional judicial tests of expectation of compensation and economic dependence cannot be ignored. On the one hand, the Opinion Letter states that a volunteer who works weekends and holidays in the hospital gift shop to "sell flowers, balloons, gifts, publications, personal care items, and sundries" should be considered to be an employee because this "does not involve ministering **directly** to the comfort of the patient." On the other hand, it states that "volunteers **generally perform functions related to patient comfort and welfare** such as tending to patients' non-medical requests for drinks, snacks, magazines, and personal care items." Thus, according to the Opinion Letter, a volunteer may "volunteer" to speak "directly" with the patient and then go to the gift shop to purchase magazines or personal care items, but is not a volunteer if he/she is there in the gift shop on occasions to provide and sell the item. The courts have never endorsed such a test, it is unworkable, and it should be rejected here.

Plaintiff's theory while novel, would end volunteerism, in America as it known today, with a narrow exception for those whose "time would be devoted to ministering directly to the comfort

5

of [others]" (Plaintiff's Memorandum, p.3), and regardless of whether the activities are for a profit or nonprofit organization (Plaintiff's Memorandum, p.6).

### III. The Opinion Letter is Entitled to No Weight In this Court

Plaintiff states that the Opinion Letter should be entitled to whatever deference it is due by this Court (Plaintiff's Memorandum, p.9). While Columbia cannot dispute this tautological argument, the Opinion Letter at issue is entitled to *no* deference. "Opinion letters, which are issued without the formal notice and rulemaking procedures of the Administrative Procedure Act, **do not receive the same kind of** *Chevron [U. S. A. Inc. v. Natural Resources Defense Council, Inc.,* **467 U.S. 837, 844 (1984), ] deference as due administrative regulations.**" *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 525 (5th Cir. 1999) (emphasis added), *cert. denied*, ___U.S. ___, 68 U.S.L.W. 3593 (2000). As in *Kilgore v. Outback Steakhouse*, 160 F.3d 294, 302 (6th Cir. 1998), this Court should "reject the plaintiffs' argument because **neither the statute nor its regulations mention this requirement and the opinion letters do not cite to any part of the statute for this requirement**. Additionally, **the opinion letters are not entitled to** deference. . . ." (emphasis added). Indeed, the United States Supreme Court has implicitly recognized the lack of deference owed opinion letters. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, n.5 (1992) (noting that parties did not suggest that the Court defer to an opinion letter of the Department of Labor).

In any event, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. . . . If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843, n. 9. Because Plaintiff can cite only one case, *Greater New York Health Care Facilities*

*Ass'n v. Axelrod*, 770 F. Supp.183 (S.D. N.Y. 1991), which is nether relevant nor in support of his position,[4] the Opinion Letter is too slender a reed to support the weight of his proposed class action.

### IV. All The Case Law Refutes Plaintiff's Position

It must be remembered that *Alamo Foundation* itself involved a non-governmental entity. Thus, an individual who, for his or her own personal purposes and with no expectation of compensation, volunteers and works "in activities carried on by other persons either for their pleasure **or profit** is outside the sweep of the Act." *Alamo Foundation*, 471 U.S. at 302 .[5]

Plaintiff incredibly claims that the Court should ignore the case law cited in the Motion to Dismiss because the courts decided them before the Opinion Letter was issued (Plaintiff's memorandum, p. 10). To the contrary, it is clearly the Opinion Letter that should be ignored because it is contrary to the established judicial authority. Plaintiff argues that all the cited cases misconstrue *Alamo Foundation* decided in 1985 and *Walling v. Portland Terminal*, decided in 1947, despite the fact that the rationale behind the Opinion Letter was advanced by the Solicitor but not adopted by the Supreme Court in *Alamo Foundation*. In addition, the Opinion Letter was issued in 1996.

---

[4] As Plaintiff correctly notes, *Axelrod* does not arise under the FLSA. The precise challenge in *Axelrod* was to ***New York Department of Health*** policy memoranda. The Department of Health stated by policy memoranda that in nursing homes, volunteers could not provide direct patient care and that volunteers "feeding patients does not fall within the permitted exceptions" and was not permissible. Several constitutional challenges were raised to the regulation: (1) Freedom of Association; (2) "Bodily Integrity;" (3) Free Exercise of Religion; and (4) Equal Protection. Not surprisingly, the district court held that "plaintiffs' theories for invalidating the regulations are legally deficient." *Axelrod* has no relevance to this case because it never discusses the distinction under the FLSA case law between "volunteers" and "employees."

[5] Plaintiff also apparently relinquished any reliance 29 U.S.C. § 203(e)(4), recognizing, as he must, that this section, relating only to public employee volunteers, has no relevance to this case.

*Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), **was likewise decided in 1996.** *Lippold v. Duggal Color Projects*, 1998 U.S. Dist. LEXIS 335 (S.D. N.Y. Jan. 14, 1998), **was decided in 1998.** *O'Connor v. Davis*, 126 F.3d 112, 115-6 (2d. Cir. 1997), *cert. denied*, 522 U.S. 1114 (1998), **was decided in 1997 and denied *certiorari* by the United States Supreme Court in 1998.** Plaintiff cannot distinguish the cases cited in the Motion to Dismiss, nor can he "wish them away."

The undeniable fact is that Plaintiff cannot cite a single case in support of its Direct Aid and Comfort Test. All of the cited cases, including those from the United States Supreme Court hold that the difference between a "volunteer" and an "employee" is an expectation of compensation and/or some kind of economic dependency. Plaintiff has not, and cannot in good faith, allege either. There is absolutely no allegation anywhere in Plaintiff's Complaint that he or any other volunteer of the Hospital or of any other entity had any expectation of compensation or that they were otherwise economically dependent on anyone mentioned in the Complaint.

### V.   Plaintiff Confuses Indispensable Parties with Personal Jurisdiction

Finally, Plaintiff claims (erroneously) that Columbia is claiming a lack of personal jurisdiction (Plaintiff's Memorandum, p.11). Rather, the argument is that Plaintiff has failed to join an indispensable party -- University Hospital.[6]

Assuming *arguendo* (at this point in the proceedings), that Columbia is a proper party and University Hospital is merely some kind of subsidiary, then here, just as in *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir. Tex. 1985), joinder of University Hospital as a "primary participant" is "required." Plaintiff does not address the substantive issued raised by the Motion to

---

[6]   **While Columbia maintains that it is not the "employer" of the "volunteers" at University Hospital,** Columbia will raise that argument by proper Motion at the proper time, if the Motion to Dismiss is denied.

Dismiss because University Hospital is clearly an indispensable party and its joinder is reflective of the defective nature of his nationwide collective action claim.

### VI. Plaintiff Ignores the FLSA Case Law Demonstrating His "Collective Action" Is Baseless

Regardless of whether the Complaint is called a "class action" as the Eleventh Circuit does (*see Grayson v. K Mart Corp.*, 79 F.3d 1086, 1093 (11th Cir. 1996), *cert. denied*, 519 U.S. 987 (1996)) or, as Plaintiff demands, a "collective action," Plaintiff must (but clearly does not) show a "'reasonable basis' for their claim of class-wide" FLSA violations. *Id.* at 1097. "As a matter of sound case management, a court should, before offering such assistance, make a preliminary inquiry into whether a manageable class exists . . . . The courts, as well as practicing attorneys, have a responsibility **to avoid "stirring up" of litigation** through unwarranted solicitation . . . ." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264 (D. Minn. 1991) (emphasis added).

Once again, Plaintiff does not deal with this issue "head on." Rather, Plaintiff dismisses this argument by saying that it is "premature" and he "welcomes the opportunity" to make this showing. However, the "welcome opportunity" to "stir up" nationwide litigation should not occur. As held in *Saunders v. Bellsouth Advertising & Publishing Corp.*, 1998 U.S. Dist. LEXIS 20523 (S.D. Fla. 1998), where in viewing the complaint on a motion to dismiss, the alleged common claim breaks down into an unmanageable variety of legal and factual issues, the class claim should be dismissed. Plaintiff's alleged class as described includes thousands of volunteers at as many as 300 unnamed hospitals nationwide and to this he now claims that the Court should examine each and every activity engaged in by every volunteer (Complaint ¶ 8). Of the six other south Florida hospitals referred to in the Complaint (¶ 26), the Complaint describes the volunteer arrangements differently on a

hospital-by-hospital basis. For example, at two of the hospitals (St. Lucie Medical Center and Raulerson Hospital), the Complaint shows that there are auxiliary volunteer organizations. Of course, Plaintiff names none of the hospitals or auxiliary volunteer organizations as defendants because Plaintiff seeks to "stir up" nationwide litigation, but without joining any of the actual organizations that deal with volunteers at each location.

Thus, the Court must dismiss the class claims, as an unwarranted and unmanageable attempt to "stir up" baseless nationwide litigation by individuals who have no expectation of any compensation and volunteer their own time at hospitals for the sole reason that they wish to do so for their own personal reasons.

Respectfully submitted,

FORD & HARRISON LLP

By: _____
Edmund J. McKenna
Florida Bar No. 0845922
Dawn Siler-Nixon
Florida Bar No. 0993360

For the firm

101 East Kennedy Boulevard
Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

OF COUNSEL:

FORD & HARRISON LLP
516 Ingraham Building
25 Southeast Second Avenue
Miami, Florida 33131
Telephone: (305) 379-3811
Facsimile: (305) 358-5933

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by U.S. First Class Mail upon:

>   Mr. Kenneth J. Vianale
>   Mr. Jack Reise
>   Milberg Weiss Bershad Hynes & Lerach LLP
>   5355 Town Center Road, Suite 900
>   Boca Raton, Florida 33486
>
>   Mr. Melvyn I. Weiss
>   One Pennsylvania Plaza
>   New York, New York 10119

on this 13th day of April, 2000.

_____
Attorney

121681.1